## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF CONNECTICUT

**DAVID OBERMEIER, individually and**    :
**on behalf of all others similarly situated,**    :
   :    **Case No.: 23-cv-**
      **Plaintiff,**    :
   :    **CLASS AND COLLECTIVE**
      **v.**    :    <u>**ACTION COMPLAINT**</u>
   :
**NORTHEAST WORK & SAFETY**    :
**BOATS, LLC, JACK CASEY and**    :
**LINDA CASEY,**    :
   :
      **Defendants.**    :

Plaintiff David Obermeier ("Plaintiff"), through his undersigned counsel, and on behalf of all persons similarly situated, files this Class and Collective Action Complaint against Northeast Work & Safety Boats, LLC (the "Company"), Jack Casey, and Linda Casey,[1] seeking all available relief under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the New Jersey State Prevailing Wage Act, N.J.S.A § 34:11-56.25 *et seq.* ("NJPWA"), the New Jersey Wage Payment Law, N.J.S.A. § 34:11-4.10(c) ("NJWPL"), the Pennsylvania Prevailing Wage Act, 43 P.S. § 165-13 ("PPWA"),[2] and the applicable common law.

## <u>JURISDICTION AND VENUE</u>

1.     Jurisdiction over Plaintiff's FLSA claims is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2.     Supplemental jurisdiction over  related state law claims is proper under 28 U.S.C. § 1367.

---

[1] Company, Jack Casey, and Linda Casey will collectively be referred to as "Defendants."

[2] The NJPWA and PPWA (and any other applicable federal or state prevailing wage law) may collectively be referred to as the "Prevailing Wage Laws".

3.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391.  The events giving rise to Plaintiff's claims occurred within this District and Defendants conduct business and reside in this District.

## PARTIES

4.      Plaintiff David Obermeier is an adult individual residing in Carneys Point, New Jersey. Plaintiff worked for Defendant Company from approximately April 30, 2018 through the present.

5.       Defendant Company is a Connecticut limited liability company that specializes in, according to its website, providing "manned safety, inspection, crew and work boats …on federally funded bridge inspection, construction and rehabilitations projects throughout the Northeast from Maine to Virginia."[3]

6.      Defendant Company maintains its business address at 170 Main Street, New Hartford, Connecticut 06057 and employs individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-207.

7.      Defendant Company's annual gross volume of business exceeds $500,000.

8.      Defendant Jack Casey is Defendant Company's Vice President of Sales and Operations and was responsible for the illegal payroll violations alleged in this Complaint.

9.      Jack Casey had the authority to (and did) hire, fire, and discipline employees of Defendant Company.

10.     Jack Casey supervised the work of the Plaintiff and the Collective Members.

---

[3] Available at http://www.safetyboats.com/about/recent-projects (last accessed December 2, 2022).

2

11.     Defendant Linda Casey is the Managing Member of Defendant Company and was responsible for the illegal payroll violations alleged in this Complaint.

12.     Linda Casey had the authority to (and did) hire, fire, and discipline employees of Defendant Company.

13.     Linda Casey supervised the work of Plaintiff and the Collective Members.

14.     Both Jack and Linda Casey exercised discretionary control over payroll decisions at Defendant Company.

15.     As described herein, Defendants Jack and Linda Casey exercised supervisory authority over Plaintiff and exercised discretionary control over payroll decisions. Thus, Jack and Linda Casey are employers within the meaning of the FLSA and applicable state wage and hour laws.

## CLASS AND COLLECTIVE DEFINITIONS

16.     Plaintiff brings Count I of this lawsuit as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of himself and the following class of potential opt-in litigants:

> All current or former workers who operated or otherwise worked on a boat, including Boat Operators, Captains, Deckhands and similar workers who were employed by Defendant Company in the United States during the last three (3) years (the "FLSA Collective").

17.     Plaintiff brings Counts II and III of this lawsuit under the NJPWA and NJWPL, pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1367, on behalf of himself and the following class of potential opt-in litigants who opt into the FLSA Collective:

> All current or former workers who operated or otherwise worked on a boat, including Boat Operators, Captains, Deckhands and similar workers who were employed by Defendant Company on any New Jersey bridge project during the last six (6) years and was not paid the applicable prevailing wage for all hours worked on such bridge projects (the "NJPWA Sub-Collective").

18.     Plaintiff brings Count IV of this lawsuit under the PPWA, pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1367, on behalf of himself and the following class of potential opt-in litigants who opt into the FLSA Collective:

> All current or former workers who operated or otherwise worked on a boat, including Boat Operators, Captains, Deckhands and similar workers who were employed by Defendant Company on any Pennsylvania bridge project during the last six (6) months and was not paid the applicable prevailing wage for all hours worked on such bridge projects (the "PPWA Sub-Collective").

19.     Plaintiff brings Count V of this lawsuit pursuant to Fed. R. Civ. P. 23 as a class action on behalf of himself and the following class:

> All current or former workers who operated or otherwise worked on a boat, including Boat Operators, Captains, Deckhands and similar workers who were employed by Defendant Company on any bridge project in the United States during the last six (6) years[4] and were not paid the applicable prevailing wage for all hours worked on such bridge projects (the "Contract Class," jointly with the FLSA Collective, the "Classes").

20.     Throughout this Complaint, the terms "Collective(s)" and "Collective Members" shall refer to the FLSA Collective, PPWA Sub-Collective, and NJPWA Sub-Collective.  The term "Sub-Collectives" and "Sub-Collective Members" shall refer to the NJPWA Sub-Collective and PPWA Sub-Collective.

21.     Plaintiff reserves the right to redefine the Collectives prior to notice or collective action certification, and thereafter, as may be necessary.

**FACTS**

22.     As described herein, Defendants willfully failed to pay Plaintiff and the Collective Members overtime compensation for hours worked over forty (40) in a workweek, in violation of

---

[4] As to work performed by class members in states which have contract statutes of limitations of less than six years (e.g., Pennsylvania, four years), the statute of limitation applicable to the class member at the time they work in that state is the applicable state statute of limitation for breach of contract.

the FLSA, 29 U.S.C. § 207(a)(1), and willfully failed to pay Plaintiff and the Sub-Collective Members prevailing wages, as required by the Prevailing Wage Laws, on publicly funded bridge construction, reconstruction, alteration, rehabilitation and/or repair projects.

<u>**Failure to Pay Prevailing Wages to Sub-Collective Members**</u>

23.     Plaintiff and the Collective Members performed work for Defendants as Boat Captains and Deckhands (both of which fall within the "Operator" prevailing wage classification) on federal and/or state funded bridge construction and repair projects throughout the Northeastern United States.

24.     For example, Plaintiff worked for Defendants on publicly-funded projects involving the Commodore Barry Bridge (which spans the Delaware River, connecting Chester, Pennsylvania to Logan Township, New Jersey), the Betsy Ross Bridge (which spans the Delaware River, connecting Philadelphia, Pennsylvania to Pennsauken, New Jersey), and the Benjamin Franklin Bridge, (which spans the Delaware River, connecting Philadelphia, Pennsylvania to Camden, New Jersey).

25.     Defendant Company's business is specifically focused on providing "manned safety, inspection, crew and work boats … on federally funded bridge inspection, construction and rehabilitations projects throughout the Northeast from Maine to Virginia."

26.     Defendant Company functions as a subcontractor to various construction general contractors who perform work on these publicly funded projects involving the repair of bridges.

27.     Defendants' bridge projects where Plaintiff and the Collective Members performed Operator work are the quintessential type of public works projects that require the payment of prevailing wages to all workmen, laborers, and mechanics who perform work at the worksite.

28.     The public contract between the Delaware River Port Authority ("DRPA," a public entity created by interstate compact between the Commonwealth of Pennsylvania and State of New

Jersey) and the general contractor related to one of Defendants' projects titled, Commodore Barry Bridge Joint Rehabilitation & Bearings Replacement ("Commodore Barry Project"), stated: "**The Contractor shall follow the requirements related to the Prevailing Wage laws and regulations of the State of New Jersey and the Commonwealth of Pennsylvania, as appropriate given the location of the Work. Bidders shall examine and be familiar with such requirements. At a minimum, Prevailing Wages shall be paid to all laborers, workers, and mechanics performing Work under this Contract.**" (emphasis added).

29.     The subcontracts Defendant Company entered related to its bridge projects were subject to the prevailing wage stipulations. Plaintiff and the Class and Collective Members are third-party beneficiaries of Defendants' public works contracts.

30.     The bridge projects where Plaintiff and the Collective Members performed work for Defendants were for a value that far exceeded the contract threshold amounts for application of the respective Prevailing Wage Laws.  For example, the contract amount for the Commodore Barry Project contract amount was $19,254,220.00.

31.     Under the applicable Prevailing Wage Laws (and the public contracts Defendant Company entered related to the bridge projects), Defendants were required to pay Plaintiff and the Collective Members the prevailing minimum hourly wage rate for each hour worked on Defendants' bridge projects, in accordance with the classification or type of work the employees performed, i.e., Operator.

32.     The NJPWA provides, "Every contract in excess of the prevailing wage contract threshold amount for any public work … shall contain a stipulation that such workers shall be paid not less than such prevailing wage rate." N.J.S.A. § 34:11-56.27.

33.     The PPWA similarly requires, "Not less than the prevailing minimum wages as determined hereunder shall be paid to all workmen employed on public work." 43 P.S. § 165-5.

34.     The prevailing minimum wage rate is determined based on the "locality in which the public work is to be performed for each craft or classification." 43 P.S. § 165-7; *cf.* N.J.S.A. § 34:11-56.30.

35.     The prevailing wage rate consists of a combined cash rate <u>and</u> fringe benefit rate. *See N.J. Carpenters v. Tishman Constr. Corp.*, 760 F.3d 297 (3d Cir. 2014) ("The [New Jersey] prevailing wage schedule that the Commissioner publishes for each locality contains a wage rate per hour and a fringe benefit rate per hour. Employers may count certain types of fringe benefits bestowed upon employees against the fringe benefit rate per hour. **Employers providing benefits worth less than the fringe benefit rate per hour (or no benefits at all) must pay the balance to the employee in cash.**") (alterations added).

36.     Plaintiff and the Collective Members performed work for Defendants at the bridge construction sites that falls within the Operator classification. The applicable New Jersey prevailing wage rates for Operators is $90.37 (cash rate of $53.72 and fringe rate of $36.65). The PPWA prevailing rate for Operators in the Philadelphia area is $80.69.

37.     Thus, Defendants were required to pay Plaintiff and the Collective Members these respective prevailing wage rates, for each hour worked on the bridge projects, depending on the location of the work (i.e., Philadelphia rates in Philadelphia, New Jersey rates in New Jersey).

38.     Despite these clearly applicable prevailing wage requirements, Defendants arbitrarily determined that they would only pay *some* employees in accordance with the prevailing wage scale, and it would pay other employees, including Plaintiff and the Sub-Collective Members, only $18-24 per hour (without any benefits).

39.     Plaintiff and the Sub-Collective Members performed the same type of Operator work duties on the public works projects as the employees who received prevailing wages. The only apparent difference (which has absolutely no bearing on whether Defendant was required to

pay prevailing wages to Plaintiff) was that the employees who received prevailing wages are members of a local union affiliated with the International Union of Operating Engineers ("IUOE"), while Plaintiff and the Sub-Collective Members are considered "non-union" by Defendants.

40.     As described herein, Defendants never paid Plaintiff or the Sub-Collective Members the legally mandated prevailing minimum wages on its public bridge projects, including but not limited to the public projects listed at Paragraph 24 above.

### Failure to Pay Overtime for Hours Worked Over 40 in a Workweek

41.     Defendants also willfully failed to pay Plaintiff and all Collective Members overtime compensation required by the FLSA, as Defendants only compensated Plaintiff and Collective Members for forty (40) hours of work per week, when they in fact typically worked approximately forty-five (45) hours (or more) each workweek.

42.     For all times relevant to this lawsuit, Plaintiff and Collective Members typically worked forty-five (45) or more hours per week, broken down as follows:

        a.   Arrive at marina where Defendants' boats are located, conduct pre-travel safety check of the boats, fuel the boats, and travel by Defendants' boat from the marina to the worksite (approximately 30-45 minutes).

        b.   Perform Operator work duties at the bridge worksite (8 hours).

        c.   Travel from the worksite back to the marina (approximately 30 minutes).

43.     Defendants maintained a plainly illegal payroll policy whereby they considered Plaintiff and the Collective Members "off-the-clock" for the pre-travel safety checks and approximately one (1) hour per day traveling to and from the worksite via Defendants' boats. Defendants only considered Plaintiff and the Collective Members "on-the-clock" when they were working at the worksites.

44.    Defendants only compensated Plaintiff and the Collective Members for the forty (40) hours per week they spent at the bridge construction site and refused to pay Plaintiff and the Collective Members for hours 40-45 worked in a workweek (the pre-travel safety check and travel time), in willful violation of the FLSA's overtime requirements.

45.    Employees of Defendants made complaints to Defendant Jack Casey about the uncompensated travel time, and Casey responded that Defendant Company does not pay employees for travel time.

46.    On another occasion, Defendant Jack Casey told an employee that Defendant Company simply does not pay employees for overtime.

## COLLECTIVE ACTION ALLEGATIONS

47.    Plaintiff brings this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Collective and the Sub-Collectives.

48.    Plaintiff desires to pursue his claims on behalf of himself and any individual who opts into this action pursuant to 29 U.S.C. § 216(b).

49.    Plaintiff and the Collectives are "similarly situated" as that term is used in 29 U.S.C. § 216(b) because, *inter alia*, all such individuals were not paid an overtime premium for each hour worked over 40 hours in a workweek.

50.    Plaintiff and the Sub-Collectives are "similarly situated" within the meaning of 29 U.S.C. § 216(b) because, *inter alia*, Plaintiff and the Sub-Collectives all performed Operator work for Defendants on public works projects subject to the respective Prevailing Wage Laws, and were never paid the required prevailing minimum wages for such work.

51.    Resolution of this action requires inquiry into common facts, including but not limited to, Defendant Company's compensation, timekeeping, and payroll practices.

52.     Specifically, Defendant Company paid Plaintiff and the Collectives overtime compensation as required by the FLSA for each hour worked over 40 in a workweek, and failed to pay Plaintiff and the Sub-Collective prevailing wages as required by the Prevailing Wage Laws.

53.     Defendant Company employs many Collective Members. These similarly situated employees may be readily notified of this action through U.S. mail, email, and/or other appropriate means, and allowed to opt into this action pursuant to 29 U.S.C. § 216(b), for the purposes of collectively adjudicating their claims for overtime compensation, prevailing wage compensation, liquidated damages, and attorneys' fees and costs.

## CLASS ACTION ALLEGATIONS

54.     Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the Contract Class against Company.

55.     The Contract Class Members are so numerous that joinder of all members is impracticable.  Upon information and belief, there are more than fifty (50) members of the Contract Class.

56.     Plaintiff will fairly and adequately represent and protect the interests of the Contract Class Members because there is no conflict between the claims of Plaintiff and those of the Contract Classes, and Plaintiff's claims are typical of the claims of the Contract Class.  Plaintiff's counsel are competent and experienced in litigating labor and employment class actions and other complex labor and employment litigation matters, including wage and hour cases like this one.

57.     There are questions of law and fact common to the proposed Contract Class which predominate over any questions affecting only individual class members, including, without limitation: whether Company has violated and continue to violate applicable public works contracts through its policy or practice of not paying its employees required prevailing wages, supplemental benefits, and overtime compensation.

58.     Plaintiff's claims are typical of the claims of the Contract Class in the following ways, without limitation: (a) Plaintiff is a member of the Contract Class; (b) Plaintiff's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the Contract Class; (c) Plaintiff's claims are based on the same legal and remedial theories as those of the Contract Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiff and the Contract Class Members; and (e) the injuries suffered by Plaintiff are similar to the injuries suffered by the Contract Class Members.

59.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Contract Class predominate over any questions affecting only individual Class Members.

60.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.  The Contract Class is readily identifiable from Defendants' own employment records.  Prosecution of separate actions by individual members of the Classes would create the risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants.

61.     A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical.  Further, the amounts at stake for many of the class members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

62.     Without a class action, Company will retain the benefit of its wrongdoing, which will result in further damages to Plaintiff and Contract Class Members.  Plaintiff envisions no difficulty in the management of this action as a class action.

## COUNT I
### Overtime Wage Violation, 29 U.S.C. § 207(a)
### (Plaintiff and the FLSA Collective v. Defendants)

63.     All previous paragraphs are restated and incorporated by reference as though fully set forth herein.

64.     The FLSA requires that covered employees be compensated an overtime premium of 150% of their "regular rate" of pay for each hour worked over 40 hours in a workweek.  29 U.S.C. § 207(a).

65.     An employee's "regular rate" of pay, for purposes of calculating overtime owed under the FLSA, may not be lower than the applicable minimum wage, including any applicable prevailing minimum wage. *See* 29 C.F.R. 778.5 ("Where a higher minimum wage than that set in the Fair Labor Standards Act is applicable to an employee by virtue of such other legislation, the regular rate of the employee, as the term is used in the Fair Labor Standards Act, cannot be lower than such applicable minimum, for the words 'regular rate at which he is employed' as used in section 7 must be construed to mean the regular rate at which he is lawfully employed.").

66.     If an employee is subject to two or more hourly rates of pay in a given workweek, the employee's "regular rate" that week is the "weighted average of such rates."  29 C.F.R. § 778.115.

67.     Defendant Company is subject to the wage requirements of the FLSA because Defendant Company is an "employer" within the meaning of 29 U.S.C. § 203(d).

68.     At all relevant times, Defendant Company was an "employer" engaged in interstate commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. § 203.

69.     During all relevant times, Plaintiff and the FLSA Collective Members were covered employees entitled to the FLSA's protections. 29 U.S.C. § 203(e).

70.     Plaintiff and the FLSA Collective Members are not exempt from the overtime requirements of the FLSA.  *See* 29 C.F.R. § 541.3(a).  Plaintiff and FLSA Collective Members were hourly employees performing work at bridge construction sites and were entitled to be paid an overtime premium of 150% of their regular rate of pay for each hour worked over 40 hours in a workweek.  29 U.S.C. § 207(a)(1).

71.     Defendant Company's compensation scheme, applicable to Plaintiff and the FLSA Collective, failed to comply with 29 U.S.C. § 207(a)(1) because Company failed to pay *any compensation whatsoever* for hours worked over 40 in a workweek, let alone compensation at a rate of 150% of their regular rate of pay for each hour worked over 40.

72.     Defendants knowingly and willfully (or at least, recklessly) failed to compensate Plaintiff and FLSA Collective Members an overtime premium of 150% of their regular rate of pay for all hours worked in excess of 40 hours per workweek, in violation of 29 U.S.C. § 207(a)(1). Employees complained to Defendant Jack Casey about Defendant Company's failure to pay workers for the travel and overtime, and Defendants took no corrective action.

73.     Defendants also failed to make, keep, and preserve records with respect to Plaintiff and the FLSA Collective Members sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA.  29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(a)(5).

74.     Pursuant to 29 U.S.C. § 216(b), employers such as Defendants, who fail to pay employees wages in conformance with the FLSA, shall be liable to the employees for the unpaid wages, liquidated damages in an amount equal to the unpaid wages, plus court costs, expenses, and attorneys' fees incurred in recovering the unpaid wages.

## COUNT II
### New Jersey Prevailing Wage Violations, N.J.S.A. § 34:11-56.40
### (Plaintiff and the NJPWA Sub-Collective v. Defendants)

75.     All previous paragraphs are restated and incorporated by reference as though fully set forth herein.

76.     The NJPWA provides that laborers on public works projects (as defined by the NJPWA) are to be paid the minimum prevailing wage in accordance with the type of work performed.  N.J.S.A. § 34:11-56.27-28.

77.     Defendants' bridge projects in or connected to New Jersey, including but not limited to the projects listed at Paragraph 24 above, were "public works" within the meaning of the NJPWA.

78.     The DRPA is a "public body" within the meaning of the NJPWA.

79.     Each of the bridge projects where Plaintiff and the NJPWA Sub-Collective Members performed work for Defendants were well in excess of NJPWA contract threshold amount. For example, the contract amount for the Commodore Barry Bridge project mentioned above at Paragraph 24 was $19,254,220.00.

80.     The prevailing minimum wage is the sum of the minimum base wage rate and fringe benefit rate.  N.J.S.A. § 34:11-56.30.  While the NJPWA does not require an employer to pay its employees who labor on public works projects fringe benefits, it does require that if an employer does not pay any fringe benefits, the equivalent must be paid to the employees in cash wages.  *N.J. Carpenters v. Tishman Constr. Corp.*, 760 F.3d 297 (3d Cir. 2014) ("Employers providing benefits worth less than the fringe benefit rate per hour (or no benefits at all) must pay the balance to the employee in cash.").

81.     Plaintiff and the NJPWA Sub-Collective Members performed Operator duties on public works projects in New Jersey subject to NJPWA prevailing wage requirements.

82.    Plaintiff and the NJPWA Sub-Collective Members were thus entitled to the Operator minimum prevailing wages for each hour worked on such bridge projects.

83.    Pursuant to NJPWA Prevailing Wage Rate Determination, the prevailing wage rate for Plaintiff and the NJPWA Sub-Collective Members was $90.37.

84.    Defendants violated the NJPWA as it never paid Plaintiff and the NJPWA Sub-Collective the required prevailing minimum wages for hours worked on public works projects in New Jersey.  Plaintiff and the NJPWA Sub-Collective were only ever paid $18.00-$24.00 per hour (without benefits) for the work they performed on public projects in New Jersey.

85.    Defendants also failed to make, keep, and preserve records with respect to Plaintiff and the NJPWA Members sufficient to determine their wages, hours, and other conditions of employment in violation of the NJPWA. N.J.S.A. § 34:11-56.29.

86.    Pursuant to N.J.S.A. § 34:11-56.40, employers such as Defendants, who fail to pay employees wages in conformance with the requirements of the NJPWA, shall be liable to the employees for the unpaid wages, as well as court costs, expenses, and attorneys' fees incurred recovering the unpaid wages.

<u>**COUNT III**</u>
**Violation of the New Jersey Wage Payment Law, N.J.S.A. § 34:11-4.10(c)**
**(Plaintiff and the NJPWA Sub-Collective v. Defendants)**

87.    All previous paragraphs are restated and incorporated by reference as though fully set forth herein.

88.    The NJWPL provides employees a private right of action for violations of the NJPWA and other state wage and hour laws.  N.J.S.A. § 34:11-4.10(c).

89.    As described herein, Defendants violated the NJPWA by failing to pay Plaintiff and the NJPWA Sub-Collective the prevailing minimum and overtime wages required by the NJPWA, the public contracts, and the Wage Determinations.

90.     Defendants' violation of the NJPWA was not an inadvertent error made in good faith; nor were there any reasonable grounds for belief that Defendants' actions were not a violation of the NJPWA.  Rather, in flagrant disregard of New Jersey law, Defendants made no attempt to pay Plaintiff the prevailing minimum wage required by the NJPWA, despite having knowledge of the requirement to pay prevailing wages via at least the public contracts it entered related to their bridge projects or the DRPA invitation to bid documents.

91.     Pursuant to N.J.S.A. § 34:11-4.10(c), employers such as Defendants, who fail to pay employees wages in conformance with the NJPWA, shall be liable to the employees for the unpaid wages, liquidated damages equal to 200% of the unpaid wages, plus court costs, expenses, and attorneys' fees incurred.

## COUNT IV
### Pennsylvania Prevailing Wage Violations, 43 P.S. § 165-13
### (Plaintiff and the PPWA Sub-Collective v. Defendants)

92.     All previous paragraphs are restated and incorporated by reference as though fully set forth herein.

93.     The PPWA requires that all workmen, including all laborers and mechanics, on public works projects are to be paid the minimum prevailing wage in accordance with the type of work performed. 43 P.S. § 165-5.

94.     Defendants' bridge projects located in or connected to the State of Pennsylvania, including but not limited to Defendants' project related to the Commodore Barry bridge mentioned above, are public works projects within the meaning of the PPWA.

95.     The DRPA is a Pennsylvania "public body" within the meaning of the PPWA. The DRPA maintains and operates the Commodore Barry Bridge, Betsy Ross Bridge and Ben Franklin Bridge, and was a party to the contracts regarding the reconstruction, demolition, alteration and/or repair work on these bridge projects under which Defendant Company worked as a subcontractor.

96.     The general contract amounts of the Pennsylvania bridge projects mentioned at Paragraph 24 above (and any other bridge project where Plaintiff and/or PPWA Sub-Collective Members performed work for Defendants in Pennsylvania) were well in excess of the PPWA contract threshold amount. For example, the contract amount for the Commodore Barry Project was $19,254,220.00.

97.     Plaintiff and the PPWA Sub-Collective Members are workmen within the meaning of the PPWA, and as such, were entitled to be paid the prevailing minimum wage for each hour worked on Defendants' bridge projects in Pennsylvania.

98.     Plaintiff and the PPWA Sub-Collective Members performed Operator duties on public works projects in Pennsylvania subject to PPWA prevailing wage requirements.

99.     Plaintiff and the PPWA Sub-Collective Members were thus entitled to the Operator minimum prevailing wages for each hour worked on such bridge projects.

100.    Pursuant to PPWA and PPWA Prevailing Wage Determination, the prevailing wage rate for Plaintiff and the PPWA Sub-Collective Members was $80.69.

101.    Defendants violated the PPWA as it never paid Plaintiff and the PPWA Sub-Collective the required prevailing minimum wages for hours worked on public works projects in Pennsylvania. Plaintiff and the PPWA Sub-Collective were only ever paid $18.00-$24.00 per hour (without benefits) for the work they performed on public projects in Pennsylvania.

102.    Employers such as Defendants who fail to pay prevailing wages in conformance with the PPWA shall be liable to the employees for an amount equal to the unpaid wages. 43 P.S. § 165-13.

## COUNT V
### Breach of Contract as Third-Party Beneficiaries
### (Plaintiff and the Contract Class v. Company)

103.    All previous paragraphs are restated and incorporated by reference as though fully set forth herein.

104.    Plaintiff is a direct employee of Company and performed Operator work on many public works projects.  Company was a subcontractor of various general contractors on the public works projects.  Plaintiff often worked in excess of 40 hours in a workweek, frequently working 45 hours per week.

105.    Similarly, Contract Class Members were also direct employees of Company performing Operator work on various government-funded projects throughout the Northeastern United States within the past 6 years.  Members of the Contract Class typically worked in excess of 40 hours in a workweek.

106.    Pursuant to applicable public works contracts between various governmental entities and general contractors, and the incorporated prevailing wage and benefit provisions, as well as the subcontracts between the general contractors and Company for the work on the bridge projects, Company was obligated to pay Plaintiff and Contract Class Members the applicable prevailing wages and benefits for Operators provided in relevant state Wage Determinations for all hours of work performed.

107.    Pursuant to the applicable public works contracts, Company was also obligated to pay Plaintiff and the Contract Class Members an overtime premium at the prevailing rates, and on the specific bases provided, in the relevant state wage determinations.

108.    Plaintiff and the Contract Class Members, as employees and laborers/mechanics entitled to the prevailing wages and benefits described in the preceding paragraphs under the terms

of the public works contracts, are intended third-party beneficiaries of the applicable public works contracts.

109.    Defendant Company failed to pay Plaintiff and members of the Contract Class for all hours worked at the Operator rate, in violation of the applicable public works contracts.

110.    Defendant Company failed to pay Plaintiff and members of the Contract Class the overtime premiums required by the relevant state wage determinations and public works contracts.

111.    Plaintiff and members of the Contract Class were harmed by Defendant Company's breach of the applicable public works contracts in that they were deprived of the applicable prevailing minimum wages, supplemental benefits, and overtime premiums required by the terms of the public works contracts.

112.    Plaintiff and members of the Contract Class are each due unpaid prevailing wages and benefits at the Operator rate, as well as overtime compensation calculated based on the Operator prevailing rate and on the bases provided in the relevant state wage determination (e.g., for each hour worked on Saturdays), plus any additional damages (e.g., liquidated damages or interest) provided in applicable public works contracts, and all consequential damages resulting from the breach.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks the following relief:

  a.  An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

  b.  Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Collective Members;

  c.  An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Contract Class;

    d.   Unpaid prevailing wages and overtime wages, to the fullest extent permitted by law;

    e.   Liquidated damages and prejudgment interest to the fullest extent permitted by law;

    f.   Litigation costs, expenses, and attorneys' fees to the fullest extent permitted by law; and

    g.   Such other and further relief the Court deems just and proper.

Dated: Stamford, Connecticut
       January 11, 2023

                           Respectfully Submitted,

                           **BOURTIN LAW, PLLC**

                           /s/ Stephen M. Bourtin
                           68 Southfield Avenue, Suite 100
                           Stamford, Connecticut 06902
                           Telephone: (203) 350-3671
                           sbourtin@bourtinlaw.com

                           **GOODLEY MCCARTHY LLC**
                           James E. Goodley*
                           Ryan P. McCarthy*
                           1650 Market Street, Suite 3600
                           Philadelphia, PA 19103
                           Telephone: (215) 394-0541
                           james@gmlaborlaw.com
                           ryan@gmlaborlaw.com

                           **MORGAN ROOKS, PC**
                           Franklin J. Rooks, Jr.*
                           525 Route 73 North, Suite 104
                           Marlton, NJ 08053
                           Telephone: (856) 874-8999
                           Email: fjrooks@morganrooks.com

                           *Attorneys for Plaintiff and the Classes*
                           *To be Admitted *Pro Hac Vice*

# IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **DAVID OBERMEIER, individually and on behalf of others similarly situated** | : | |
| | : | |
| | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CLASS AND COLLECTIVE ACTION** |
| | : | |
| **NORTHEAST WORK & SAFETY BOATS, LLC** | : | |
| | : | |
| **and** | : | |
| | : | |
| **JACK CASEY** | : | |
| | : | |
| **and** | : | |
| | : | |
| **LINDA CASEY** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## CONSENT TO JOIN COLLECTIVE ACTION LAWSUIT

Pursuant to 29 U.S.C. § 216(b), I consent to become a party plaintiff in the above-captioned Fair Labor Standards Act case, to be represented by Morgan Rooks, PC, Goodley McCarthy LLC, and Bourtin Law, PLLC, and to be bound by judgment of the Court (including any Court-approved settlement).

Signature: _David E. Obermeier (signature)_____

Name: __David Obermeier_____

Address: ██████████████_____

__Carneys Point, NJ 08069____

Email: ████████████████████

Phone: ████████████_____

**Return Form To:**

Franklin J. Rooks, Esq.

Morgan Rooks, P.C.

525 Route 72 North, Suite 104

Marlton, NJ 08053

856-874-8999

fjrooks@morganrooks.com