## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID OBERMEIER, *individually and on behalf of all others similarly situated*,     *Plaintiff*, | ) ) ) | 3:23-CV-00046 (SVN) |
| | ) | |
| v. | ) | |
| | ) | |
| NORTHEAST WORK & SAFETY BOATS, LLC, JACK CASEY, and LINDA CASEY     *Defendants*. | ) ) ) ) | March 19, 2024 |

### RULING ON PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION

Sarala V. Nagala, United States District Judge.

Plaintiff David Obermeier, who was employed as a deckhand and boat captain by Defendant Northeast Work & Safety Boat, LLC ("Northeast") (together with Defendants Jack Casey and Linda Casey, "Defendants"), brings this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., the New Jersey Prevailing Wage Act ("NJPWA"), N.J.S.A. § 34:11-56.25 *et seq.*, the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. § 34:11-4.10(c), the Pennsylvania Prevailing Wage Act ("PPWA"), 43 P.S. § 165-13, and the common law. Relevant to this motion, Plaintiff alleges, individually and on behalf of all others similarly situated, that Defendants failed to pay required overtime wages in violation of the FLSA and failed to pay prevailing minimum wages as required by New Jersey and Pennsylvania law. Plaintiff now moves for conditional certification of an FLSA collective and two state-law sub-collectives. Defendants oppose the motion.

For the reasons below, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's motion for conditional certification. Specifically, the motion is GRANTED insofar as it seeks

conditional certification of an FLSA collective and DENIED insofar as it seeks conditional certification of state-law sub-collectives.

## I.       RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The following background is taken from Plaintiff's pleadings, as well as the parties' exhibits and briefing on Plaintiff's motion for conditional certification.

Northeast is a Connecticut limited liability company that functions as a subcontractor, providing safety and inspection crews and work boats to general contractors who work on publicly-funded bridge inspection, construction, and repair projects.  First Am. Compl. ("FAC"), ECF No. 28 ¶ 5; Pl.'s Mot. for Cond'l Cert. Ex. A, Obermeier Decl. ¶¶ 3–4.  Defendants Jack Casey and Linda Casey are the Vice President of Sales and Operations and the Managing Member of Northeast, respectively, and both have authority over payroll decisions.  FAC ¶¶ 8, 11, 14.  Plaintiff works as a deckhand, and occasionally as a boat captain, on one of Northeast's boats.  Obermeier Decl. ¶ 5.

Plaintiff alleges that he is considered "on the clock" only when the boat arrives at the bridge construction site (the "worksite").  *Id.* ¶ 13.  However, he and other similarly situated employees were required to conduct pre-travel safety checks on boats at the marina where they were docked, and then take the boats from the marina to the worksite, all of which took at least one hour per day, according to Plaintiff.  FAC ¶ 42; Obermeier Decl. ¶¶ 7–9.  Plaintiff alleges he and other similarly situated employees should been compensated for that time pursuant to federal law and, because they were not, they are owed unpaid wages and overtime compensation under the FLSA.  FAC ¶¶ 43–44.  Plaintiff alleges that Defendants' failure to pay these wages was willful.  *Id.* ¶¶ 22, 41, 44, 73.  In addition, Plaintiff alleges that, for specific projects in New Jersey and Pennsylvania, Defendants were required to pay a statutorily mandated prevailing minimum wage to employees

like Plaintiff, based on the duties they performed and the projects they were engaged in, but failed to do so.  *See generally* FAC ¶¶ 23–40.

On April 21, 2023, shortly after filing the FAC, Plaintiff filed the instant motion for conditional certification of a collective action, ECF No. 35.  Plaintiff seeks conditional certification of a collective that includes:  "all current and former employees of [Northeast] who operated or otherwise worked on a boat as a Boat Operator, Captain, Deckhand or similar position within the last three (3) years ("the FLSA collective")."  ECF No. 35 at 1.  In addition, Plaintiff seeks the conditional certification of two sub-collectives:  (1) employees who opt in to the FLSA collective and who were employed by Northeast "on any New Jersey bridge project during the last six (6) years and [were] not paid the applicable prevailing wage for all hours worked on such bridge projects . . . (the "NJPWA Sub-Collective");" and (2) employees who opt into the FLSA collective and who were employed by Northeast "on any Pennsylvania bridge project during the last six (6) months and [were] not paid the applicable prevailing wage for all hours worked . . . (the "PPWA Sub-Collective"[)]."  ECF No. 35 at 2.  Plaintiff does not seek certification of a class under Federal Rule of Civil Procedure 23 as to any claim.  Pl.'s Reply Br., ECF No. 45 at 3.

In support of this motion, Plaintiff and three other current and former employees of Defendants, all putative opt-in plaintiffs who worked as either boat captains, deckhands, or both, filed declarations.  *See generally* Obermeier Decl.; Pl.'s Mot. for Cond'l Cert. Ex. B, Burden Decl., ECF No. 35-4; *id.* at Ex. C, Barger Decl., ECF No. 35-5; *id.* at Ex. D, Hollingsworth Decl., ECF No. 35-6.  The declarations submitted all corroborate Plaintiff's declaration and account of events—that Defendants do not pay for time spent prior to arrival at the worksite, and that this time generally accounts for at least one hour a day and five hours a week, including in weeks where employees worked 40 hours at the worksite.  Burden Decl. ¶¶ 11–16; Barger Decl. ¶¶ 11–17;

Hollingsworth Decl. ¶¶ 11–16.  Three of the declarants aver that they were told this was the company policy by Defendant Jack Casey.  Obermeier Decl. ¶ 21 (Defendant Jack Casey "told [Plaintiff] that the company does not pay employees for travel time."); Burden Decl. ¶ 20 (same); Barger Decl. ¶ 20 (told that "the company does not pay employees for overtime").  Two declarants also stated that they were actively discouraged from engaging in this lawsuit by Defendant Jack Casey.  Obermeier Decl. ¶ 24 (declaring that Defendant Jack Casey called Plaintiff, told him to drop the case, and offered him money to drop the case, and also that he was aware at least two other employees had been contacted); Barger Decl. ¶ 22 (Defendant Jack Casey called Mr. Barger, told him case would not succeed, and encouraged him to convince Plaintiff to settle).  Lastly, the declarations corroborate Plaintiff's allegations that employees were not paid the minimum prevailing wages.  *See, e.g.*, Hollingsworth Decl. ¶¶ 18–19.

In opposing Plaintiff's motion, Defendants argue that Plaintiff has not carried his burden of demonstrating conditional certification is appropriate because he has provided only declarations of other employees and not provided any "work schedules, written policies or handbooks, or other documentation" to support his allegation that "the employees worked 45 hours per week without receiving overtime compensation."  Defs.' Opp. Br., ECF No. 44 at 7.  In addition, Defendants argue that conditional certification of the NJPWA and PPWA sub-collectives is inappropriate because Plaintiff has not moved for or demonstrated that he meets the requirements of Rule 23 class certification.  *Id.* at 8–9.  Lastly, Defendants object to numerous aspects of Plaintiff's proposed notice to the collective.  *Id.* at 9–17.

## II.    LEGAL STANDARD

Under the FLSA, employees may bring "collective actions," which allow them to "sue on behalf of themselves and other employees who are 'similarly situated.'"  *Shahriar v. Smith &*

*Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 243–44 (2d Cir. 2011) (citing 29 U.S.C. § 216(b)).  The FLSA requires, however, that an employee "affirmatively consent to join a 'collective action' in order to assert a claim."  *Id.* at 244; *see* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any [action under section 216(b)] unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

Courts in the Second Circuit apply a "two-step method" to determine whether an action should be certified as a collective action under the FLSA.  *Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2010).  First, a motion for conditional certification is filed and the Court "must determine whether there are any 'similarly situated' potential plaintiffs who should receive notice of the pending action and have an opportunity to opt in."  *See Zhu v. Matsu Corp.*, 424 F. Supp. 3d 253, 263 (D. Conn. 2020) (citing *Myers*, 624 F.3d at 555).  Such notice may be sent after the Court determines that plaintiffs have made a "modest factual showing" that they and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law."  *Myers*, 624 F.3d at 555 (citation omitted).  Although this "modest factual showing" requires more than "unsupported assertions, it is a low standard of proof, and the burden on the plaintiffs is minimal."  *Zhu*, 424 F. Supp. 3d at 263 (internal quotation marks and citations omitted).

Once a court has conditionally certified an FLSA collective, any similarly situated employees "may opt into the case and become plaintiffs."  *Marichal v. Attending Home Care Servs., LLC*, 432 F. Supp. 3d 271, 277 (E.D.N.Y. 2020).  No employee may become a plaintiff until he or she files a written consent on the docket. 29 U.S.C. § 216(b).  This "opt-in" procedure— in contrast to Rule 23's "opt-out" procedure—is a distinct statutory requirement for an FLSA collective.  *See Zhu*, 424 F. Supp. 3d at 262 ("Unlike a Rule 23 class action where potential class

members are parties to the suit unless they affirmatively opt out, an FLSA collective action requires plaintiffs to affirmatively opt in to the suit to benefit from the judgment.").

At the second step of the certification process, the Court will, "on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Myers*, 624 F.3d at 555. The action may be "de-certified" if the record reveals that the opt-in plaintiffs are not similarly situated. *Id.* In such cases, the opt-in plaintiffs' claims may be dismissed without prejudice. *Id.*

## III.    DISCUSSION

Only step one certification is at issue here. First, for the reasons discussed below, the Court finds that step one conditional certification of the FLSA collective is warranted, but that conditional certification of the proposed NJPWA and PPWA sub-collectives is not appropriate. In light of its conclusion that conditional certification is warranted, the Court also addresses Plaintiff's proposed notice to the FLSA collective and Defendants' objections to the same.

### A.  Conditional Certification

#### 1.  *FLSA Collective*

Plaintiff has carried his modest burden of demonstrating that conditional certification and notice to the putative opt-in class is warranted. *See Zhu*, 424 F. Supp. 3d at 263. The four declarations stating that the declarants worked more than 40 hours a week (counting their travel to the worksite as working time) without being paid overtime compensation, and were told by Defendant Jack Casey that no such compensation would be paid as a matter of course, are sufficient to demonstrate, at this stage, the existence of a common policy that violated the law. This is true despite that Plaintiff has submitted no other documentation in support of the existence of such a policy. *See Barone v. LAZ Parking Ltd. LLC*, No. 3:17-CV-01545(VLB), 2019 WL 13274887, at

*6 (D. Conn. Feb. 11, 2019) (finding plaintiffs' testimony provided sufficient evidence to support conditional certification regarding overtime claim even though "no written policy exists" and recognizing case law holding that plaintiffs need not identify a "formal, facially unlawful policy" to achieve conditional certification); *see also Zhu*, 424 F. Supp. 3d at 267 (two affidavits from named plaintiffs demonstrated a "common compensation policy"); *Fracasse v. People's United Bank*, No. 3:12-CV-670 (JCH), 2013 WL 3049333, at *3 (D. Conn. June 17, 2013) (finding one affidavit sufficient to meet burden for step one certification). Further, to the extent Defendants challenge this evidence as not supporting an inference that Plaintiff and others "actually spent 40 hours 'on site' at the job location," *see* ECF No. 44 at 7, this is a challenge to the credibility of Plaintiff and the other declarants (who aver that they did work 40 hours at the worksite in at least some weeks), which it is inappropriate for the Court to resolve at this time. *See Zhu*, 424 F. Supp. 3d at 263.

Admittedly, the evidence regarding other potentially similarly situated employees, beyond the four declarants, is fairly conclusory and does not provide specific details of who these individuals may be. *See* Obermeier Decl. ¶ 23 ("I am aware of approximately six other employees who are not paid for travel time and who are not paid the prevailing wage."); Burden Decl. ¶ 22 (aware of "approximately 4 other employees"); Barger Decl. ¶ 21 (same); Hollingsworth Decl. ¶ 20 (aware of "other employees"). Some courts have required more detailed information. *See, e.g.*, *Hickmon v. Fun & Fit LLC*, No. 20-CV-10270 (RA) (JLC), 2021 WL 3578296, at *6 (S.D.N.Y. Aug. 13, 2021) (denying motion to conditionally certify collective where plaintiff did not provide details "such as the names of other employees, when any conversations with those employees took place, and information regarding the hours those employees worked or how they were paid"). However, other courts "regularly determine that two or three declarations corroborating each other

constitute a sufficient amount of evidence to conditionally certify a collective action under the FLSA." *Colon v. Major Perry St. Corp.*, No. 12 CIV. 3788 (JPO), 2013 WL 3328223, at *2, *6 (S.D.N.Y. July 2, 2013) (conditionally certifying collective based on affidavit from named plaintiff stating there were others similarly situated, and two other declarations); *see also Cohen v. Gerson Lehrman Grp.*, Inc., 686 F. Supp. 2d 317, 331 (S.D.N.Y. 2010).  Here, the Court agrees with Plaintiff that the four declarations, three of which are from employees other than the named plaintiff, are sufficient to demonstrate that "similarly situated plaintiffs do, in fact, exist," *see Zhu*, 424 F. Supp. 3d at 265, despite that limited detail has been provided about potential opt-in collective members beyond the three declarants.

Accordingly, the Court grants Plaintiff's motion insofar as it seeks conditional certification of an FLSA collective.

### 2. NJPWA and PPWA Sub-Collectives

On the other hand, the Court finds that conditional certification of Plaintiff's proposed state-law sub-collectives is not appropriate.  Typically (if not exclusively), as recognized by the Second Circuit, plaintiffs asserting state law claims similar or related to their FLSA claims proceed by seeking conditional certification of an opt-in FLSA collective and Rule 23 certification of an opt-out state law class action.  *See Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 510 (2d Cir. 2020) ("Because FLSA and state law claims usually revolve around the same set of facts, plaintiffs frequently bring both types of claims together in a single action using the procedural mechanisms available under 29 U.S.C. § 216(b) to pursue the FLSA claims as a collective action and under Rule 23 to pursue the state law claims as a class action under the district court's supplemental jurisdiction.") (citing *Shahriar*, 659 F.3d at 244) (cleaned up).  Here, instead, Plaintiff has explicitly eschewed Rule 23, ECF No. 45 at 3, and seeks to have the Court certify two

state law sub-collectives. The Court declines to do so, as such a procedure finds no footing in Second Circuit precedent.

Initially, the Court notes that none of the state laws at issue authorize an opt-in collective action procedure, which Plaintiff does not appear to dispute. *See* N.J. Stat. Ann. § 34:11-4.10(c) (authorizing suits "for and on behalf of other similarly situated employees"); N.J. Stat. Ann. § 34:11-56.40 (same); 43 Pa. Stat. Ann. § 165-13 (granting a "right of action" for any workmen aggrieved under the act); *see also Shahriar*, 659 F.3d at 244 (noting that, where state law did "not have a provision for collective actions . . . plaintiffs may pursue a traditional 'opt-out' class action" instead). The Court is also not aware of any authority providing that the FLSA allows for opt-in collectives based on anything other than violations of the FLSA itself. [1] *See* 29 U.S.C. § 216(b) (authorizing collective actions for violations "of this title"); *Scott*, F.3d at 519 (noting that the collective action procedure under the FLSA is "tailored specifically to vindicating *federal* labor rights") (emphasis added). Thus, notwithstanding Plaintiff's creative contention that his state law claims were "not filed as Rule 23 claims," and were filed as sub-collectives, *see* ECF No. 45 at 3 (citing FAC ¶¶ 17–18), Plaintiff has identified no statutory authority for certifying them as such.

Plaintiff's argument that the state-law-based claims can be certified as an opt-in collective action because they are premised on membership in the FLSA collective and because the Court has supplemental jurisdiction over the claims, *see id.*, appears to be a novel one—neither the parties nor the Court has identified a case in which a court certifies a state law "sub-collective" like the one Plaintiff requests here. *Cf. Gessele v. Jack in the Box, Inc.*, No. 3:10-CV-960-ST, 2013 WL

---

[1] To the extent Plaintiff implicitly suggests that the sub-collectives are based on an FLSA violation, the Court rejects that suggestion. Although Plaintiff proposes that membership in the sub-collectives be premised on membership in the FLSA collective, *see* ECF No. 45 at 3, the sub-collectives are explicitly targeted at violations of New Jersey and Pennsylvania law. Indeed, this distinction is more than purely legal, as the claims target different conduct—while the FLSA claim targets wage violations based on uncompensated overtime, the state law claims challenge the failure to pay prevailing minimum wages. At least in theory, then, there could be employees who suffered one violation but not the other, and the state law collectives are not properly viewed as subordinate to the FLSA claim.

1326563, at *17–18 (D. Or. Jan. 28, 2013), *report and recommendation adopted*, No. 3:1 0-CV-00960-ST, 2013 WL 1326538 (D. Or. Apr. 1, 2013) (approving proposed *FLSA* sub-collectives based on variations in the alleged FLSA violation); *Clements v. WP Operations, LLC*, No. 19-CV-1051-WMC, 2023 WL 315511, at *1 (W.D. Wis. Jan. 19, 2023) (recognizing sub-collectives *within* FLSA claims, based on position of employee).

The three cases cited by Plaintiff to support his argument are inapposite. *See* Pl.'s Br. in Supp. of Mot. for Cond'l Cert., ECF No. 35-1 at 18–19; ECF No. 45 at 2–3. First, they are not binding on this Court. And second, though they support as a general matter Plaintiff's position that state law claims can proceed in a case alongside FLSA claims, they do not support Plaintiff's contention that state law claims may be conditionally certified as collective actions, as they all arose in distinct contexts from the one presented here.

In *O'Brien v. Ed Donnelly Enterprises, Inc.*, which arises in a complicated procedural posture, the Sixth Circuit was called upon to decide whether opt-in plaintiffs (whose FLSA claims in one action had been mooted by an offer of judgment in a second action) could nonetheless join an appeal challenging the decertification of the first action's opt-in collective, and potentially assert supplemental state law claims in the first FLSA action. 575 F.3d 567, 579–83 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016). While the court suggested that it would not "make sense" to have only the FLSA claims proceed collectively "while the supplemental claims would have to proceed individually or would be required to run in parallel to the collective action only by satisfying the more stringent requirements" of Rule 23, it did so in the context of assessing whether a court would have supplemental jurisdiction over state law claims of opt-in plaintiffs. 575 F.3d at 580. The Sixth

Circuit did not, however, directly certify sub-collectives for state law claims, as that issue was not before it.

*Hicks v. T.L. Cannon Corp.*, too, involved a question of whether the opt-in plaintiffs had standing to pursue state law claims—not whether to certify a sub-collective on a state law claim. 35 F. Supp. 3d 329, 339 (W.D.N.Y. 2014).  Lastly, in *White v. Western Beef Props.*, the court was tasked with assessing the reasonableness of the requested attorney's fees in an FLSA settlement. No. 07-cv-2345 (RJD) (JMA), 2014 U.S. Dist. LEXIS 155868 (E.D.N.Y. Sept. 30, 2014).  Citing to *O'Brien*, it noted that the plaintiffs' counsel could have preserved opt-in plaintiffs' claims under state law by seeking "a determination that, despite the denial of certification under Rule 23, the Court still had the authority to adjudicate the [state law] claims of the surviving opt-ins as part of the FLSA collective action."  *Id.* at *23.  Notably, *White* only suggested an attorney could have *sought* such a determination; it did not opine as to whether such a motion would have been successful.  Thus, in none of the cases cited by Plaintiff did a court certify any form of state-law sub-collective.  Instead, the question that arose in all three cases, and which the Court will address at a later point if it arises in this case, was whether and to what extent employees who had opted in to FLSA collectives could assert supplemental state law claims.

Plaintiff has not demonstrated any reason why the typical procedure of pursuing class certification under Rule 23 is inapplicable here, or why his attempt to use sub-collectives as an apparent end-run around Rule 23's more stringent requirements should be approved by this Court. Thus, the Court rejects Plaintiff's request that it take the novel step of conditionally certifying opt-

in sub-collectives based on state law violations.  Plaintiff is free to pursue class certification of his state law claims pursuant to Rule 23.[2]

B.  Proposed Notices and Consent Forms

Having found conditional certification appropriate as to Plaintiff's FLSA collective, the Court turns to issues related to notice to potential opt-in plaintiffs.

Although the FLSA has no provision for issuing notice, it is well established that district courts have the "power to authorize" notice and "broad discretion to craft appropriate notices in individual cases." *Bittencourt v. Ferrara Bakery & Café Inc.*, 310 F.R.D. 106, 116 (S.D.N.Y. 2015); *see also Rosario v. Valentine Ave. Disc. Store, Co.*, 828 F. Supp. 2d 508, 518 (E.D.N.Y. 2011) ("Determining what constitutes sufficient notice to putative plaintiffs in a Section 216(b) collective action is a matter left to the discretion of the district courts.").  "Because the benefits of a collective action depend on employees receiving notice of its pendency 'so that they can make informed decisions about whether to participate,' district courts are encouraged to monitor the notice process and ensure that the proposed notice is 'timely, accurate, and informative.'" *Zhu*, 424 F. Supp. 3d at 267 (citations omitted).

Plaintiff requests Defendants provide to Plaintiff's counsel the names, last known addresses, cell phone numbers, and email addresses for those individuals who may be covered by the collective action for the purpose of sending the potential plaintiffs notice of this action and a consent form allowing them to join the action.  Plaintiff further requests that this Court authorize the submission of notice (and reminder notices) by first-class mail, email, and text message, and a

---

[2] In addition, Plaintiff is free to include reference to his state law claims in the notice to the class, as this information can "help potential plaintiffs determine whether they want to opt in to this suit or to pursue their claims in a different forum, and it is not clear how the dissemination of such information would harm defendants." *Dilonez v. Fox Linen Serv. Inc.*, 35 F. Supp. 3d 247, 255 (E.D.N.Y. 2014) (citation omitted).

90-day notice period.  Defendants raise numerous objections to the form and method of Plaintiff's proposed notice-and-consent process, each of which is addressed below.

As a threshold matter, the Court notes that Plaintiff and Defendants have each provided separate proposed notices and consent forms for the Court's review.  *See* Pl.'s Mot. for Cond'l Cert. Ex. E, Proposed Notice, ECF No. 35-7; *id.* at Ex. F, Consent Form, ECF No. 35-8; Def.'s Opp. Br. Ex. A, Proposed Notice and Consent Form, ECF No. 44-1.  The variations between the parties' proposals make it somewhat difficult for the Court to address their precise notice-related disputes.  In addition, the Court expects the parties—all of whom are counseled—to be able to confer in good faith and resolve many of their disputes without the Court's intervention.  Accordingly, the Court will order the parties to confer and submit a revised proposed notice and consent form within 10 days of entry of this ruling.  The proposed language of both Plaintiff and Defendants shall be submitted in a single document that includes any remaining objections any party may have to language proposed by other parties.  The revised proposed notice shall comply with the Court's resolutions below of the various disputes the parties have raised in their briefing.

### 1.  Class Definition

Defendants object to notice being sent to all former employees, whether or not they worked over forty hours a week.  However, as Plaintiff has submitted evidence that all Northeast employees were subject to the same policy (not being compensated for their travel time to worksites) and it is undisputed that this time was not recorded, the Court finds it appropriate to notify all employees of their right to opt in, as whether employees worked 40 or more hours in a week, and how often they did so, will be a core dispute going to liability and damages that is best determined at a later date.  *See Lassen v. Hoyt Livery Inc.*, No. 3:13-CV-01529 (JAM), 2014 WL 4638860, at *6–7 (D. Conn. Sept. 17, 2014) (ordering defendant to produce a list of "all individuals

employed as full-time limousine drivers" to facilitate notice, even where defendants disputed that opt-in plaintiffs could "prove what hours they actually worked").[3]   Accordingly, Defendants must provide to Plaintiff the contact information—names, last known addresses, cell phone numbers, and email addresses—for all non-exempt employees who worked in the positions encompassed in the collective definition, regardless of whether or not these employees worked more than 40 hours per week.

### 2.   Time Period

Next, the parties dispute the relevant notice period, with Defendants claiming notice should be issued to employees who worked in the two years prior to the date of notice, and Plaintiff three years.

FLSA claims are generally subject to a two-year statute of limitations period, unless a plaintiff alleges that the defendant's violation was willful, in which case a three-year limitations period applies.   *See* 29 U.S.C. § 255(a).   "To trigger a three-year limitations period at the conditional certification stage, a plaintiff need only plead that the employer acted willfully." *Zhu*, 424 F. Supp. 3d at 268.   Defendants argue that Plaintiff's allegation that Defendant Jack Casey notified him that Northeast did not pay for travel time is not enough to establish willfulness.   ECF No. 44 at 12.   Regardless of whether Plaintiff can ultimately prove willfulness, Plaintiff's allegations of willfulness (which go beyond the paragraph cited by Defendants, *see* FAC ¶¶ 22, 41, 44, 73) are sufficient for the Court to authorize a three-year notice period.   *See Aboah v. Fairfield Healthcare Servs.*, Inc., 662 F. Supp. 3d 192, 210 (D. Conn. 2023).

---

[3] The Court need not address Defendants' other objections to the class definition, regarding geography and whether employees worked qualifying positions, as these objections go to Plaintiff's prevailing wage claims, for which the Court has denied sub-collective certification.

Neither Plaintiff nor Defendants have proposed a precise date for this three-year period to commence, as both key the notice period to the date notice is sent. *See* ECF No. 45 at 5. In general, an opt-in plaintiff in an FLSA collective action may only recover for damages that were incurred during the two- or three-year period prior to the date he or she opts in to the collective. *See* 29 U.S.C. § 256(b). However, opt-in plaintiffs with otherwise "untimely claims [may] have colorable equitable tolling arguments" with respect to the statute of limitations in this action. *See Zhu*, 424 F. Supp. 3d at 269. For example, equitable tolling may be appropriate when there has been a "significant delay" in ruling on the conditional certification motion. *Id.* Where such equitable tolling considerations are present, courts have at times authorized more inclusive notice periods, without definitively deciding whether to toll the statute of limitations. *Id.* at 275 (citing cases). Here, despite Plaintiff's request that notice issue promptly, *see* ECF No. 35-1 at 23, the Court's ruling on Plaintiff's present motion has been significantly delayed. Accordingly, the Court finds that notice should be provided to all current and former non-exempt individuals employed by Defendants in the relevant positions at any time between April 12, 2020 (three years prior to the filing of Plaintiff's amended complaint), and the date of this Order. *See Zhu*, 424 F. Supp. 3d at 270 (extending notice period to three years prior to filing of complaint); *Aboah*, 662 F. Supp. 3d at 210 (same). Defendants remain free to raise any challenges to the timeliness of an opt-in plaintiff's claims at a later point.

### 3. *Case Caption*

Next, the Court rejects Defendants' argument that the case caption should not be included in the notice provided to potential opt-in plaintiffs. Although Defendants cite one out-of-circuit case for the proposition that the case caption provides a "judicial imprimatur [that] is likely to be misunderstood as a representation that the suit probably has merit," *see Flores v. Lifeway Foods,*

*Inc.*, 289 F. Supp. 2d 1042, 1046–47 (N.D. Ill. 2003) (citing *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 581 (7th Cir. 1982)), courts in this Circuit regularly approve notices that contain the case caption. *See, e.g.*, *Panora v. Deenora Corp*, No. 19-CV-7267 (BMC), 2020 WL 7246439, at *4 (E.D.N.Y. Dec. 9, 2020) ("The case caption merely provides basic information about the case and is appropriately included on the Notice."); *Bertone v. HSBC USA, Inc.*, No. CV 16-6993 (JMA) (ARL), 2019 WL 13144578, at *2 (E.D.N.Y. Apr. 26, 2019) ("[C]ourts routinely approve notices which include the case caption." (collecting cases)).  The Court sees no reason to deviate from this practice.  However, to ameliorate any concerns regarding an inappropriate suggestion that the merits of this case have been approved by the Court, the Court will require that the revised notice remove the statement currently on the last page of Plaintiff's proposed notice in all capital and bold letters that "this notice has been authorized by United States District Judge Sarala V. Nagala of the United States Court for the District of Connecticut," and that the last part of that paragraph, stating that the Court has taken no position on the merits, be moved to the introduction section of the notice and written in regularly capitalized and unbolded typeface.  *See* ECF No. 35-7 at 4.

### 4. *Descriptions of Potential Opt-In Plaintiffs' Obligations*

The Court further finds that the notice shall include reference to potential opt-in plaintiffs' discovery obligations.  Courts in this Circuit "routinely approve requests to include information regarding potential opt-in plaintiffs' discovery obligations" in opt-in notices.  *Knox v. John Varvatos Enterprises. Inc.*, 282 F. Supp. 3d 644, 666 (S.D.N.Y. 2017); *see also Aboah v. Fairfield Healthcare Servs., Inc.*, No. 3:20-CV-00763 (MPS), 2021 WL 6337748, at *10 (D. Conn. Jan. 12, 2021) ("The choice to opt in to a FLSA collective action triggers different rights and obligations for an individual, and the notice should explain those.").  Indeed, courts in this Circuit commonly instruct that notices to potential opt-in plaintiffs should include "a neutral and non-technical

16

reference to discovery obligations." *See, e.g.*, *Aleman-Valdivia v. Top Dog Plumbing & Heating Corp.*, No. 20-CV-421 (LDH)(MMH), 2021 WL 4502479, at *8 (E.D.N.Y. Sept. 30, 2021); *Gorzkowska v. Euro Homecare LLC*, No. 3:19-CV-01773 (VAB), 2021 WL 222349, at *7 (D. Conn. Jan. 22, 2021) ("Courts in this District have commonly approved requests for language notifying potential opt-ins that they may be required to participate in the litigation in such ways.").

The language included in the current notice, which advises potential opt-ins only that "Plaintiff's attorneys may interview you by phone and may ask you to send them documents," *see* ECF No. 35-7 at 3, does not sufficiently describe the obligations opt-in plaintiffs may face. *Cf. Knox*, 282 F. Supp. 3d at 666 (approving notice with language that informed employees that "they may be required to appear for a deposition if requested, to produce documents . . . in your possession, and to otherwise truthfully respond to discovery requests") (internal quotation marks omitted). Accordingly, the parties' joint revised notice shall include a neutral and non-technical reference to potential opt-in plaintiffs' discovery obligations, similar to the one submitted by Defendants, *see* ECF No. 44-1 at 4.

The notice may not, however, include language stating that potential opt-in plaintiffs may be responsible for costs and expenses if Defendants prevail. Courts in this Circuit "have found language about potential costs to be inappropriate given the remote possibility that such costs for absent class members would be other than *de minimis*, and the risk of an in terrorem effect that is disproportionate to the actual likelihood that costs will occur in any significant degree." *Rosario*, 828 F. Supp. 2d at 520 (cleaned up) (italicization added) (internal quotation marks omitted). Therefore, the Court will not permit the notice in this case to include such language.

5.   *Right to Separate Counsel and Submission of Consent Forms*

The Court agrees with Defendants that the notice does not clearly advise potential opt-in plaintiffs of their right to retain separate counsel.  Plaintiff's proposed notice states, under the section heading "Effect of Not Joining the Lawsuit" that "You will be free to file your own lawsuit with or without your own attorneys."  ECF No. 35-7 at 4.  It also states, in the section entitled "Effect of Joining the Lawsuit," that "If you join the lawsuit . . . [Plaintiff's attorneys] will represent you during the lawsuit," and "By joining this lawsuit, you are designating the following firm to represent your interests . . . ."  *Id.*  This is patently insufficient to inform potential plaintiffs that they could join *this* lawsuit without agreeing to be represented by Plaintiff's counsel. Accordingly, the parties' joint revised notice shall include language clearly advising potential opt-in plaintiffs that they may retain separate counsel or represent themselves in this action should they so choose.

Provided the revised notice contains such language, and despite Defendants' objection, potential opt-in plaintiffs may return their consent forms to Plaintiff's counsel, rather than to the Clerk of Court.  Courts in this Circuit "are split on whether . . . opt-in plaintiffs should mail their consent forms to the named plaintiffs' counsel or to the Clerk of Court."  *Zhu*, 424 F. Supp. 3d at 271.  Where the proposed notice or consent form "expressly informs putative plaintiffs of their 'right to retain separate counsel,'" however, courts are "more inclined to permit putative plaintiffs to return their consent forms to the named plaintiffs' counsel."  *Id.* (citations omitted).  Courts have also recognized that "returning consent forms to the Clerk of Court may be 'unnecessary' and 'burdensome' to the Court 'in light of the budgetary constraints and financial limitations faced by the federal courts'" and, thus, "requiring potential plaintiffs to return their consent forms to the named plaintiffs' counsel may be 'the more practicable and efficient method of opting in.'"  *Id.*

(collecting cases).  On the other hand, there may be concern that requiring opt-in plaintiffs to submit their consent forms to plaintiff's counsel creates a "risk of delaying a tolling of the statute of limitations relating to an individual opt-in plaintiff's claims as a result of the turnaround time occasioned between receipt of a consent form by Plaintiffs' counsel and the need to file the form with the Court."  *See Dilonez*, 35 F. Supp. 3d at 257–58 (citation omitted).

Defendant argues submission to the Clerk of Court directly is warranted to avoid disputes over timeliness.  However, considering the incentives that Plaintiff's counsel has to "quickly file the consent forms with the Court," the possibility for near-instantaneous electronic filing, and the potential burden on the Court, *see id.* at 258, the Court finds Defendants' concerns about timeliness disputes insufficient to warrant tasking the Clerk of Court with managing opt-in plaintiffs' consent forms.  In addition, the Court does not find Defendants' suggested procedure of requiring Plaintiff's counsel to file consent forms or notices on a weekly basis to be a necessary remedy, and will not adopt it.  As previously discussed, Defendants remain free to raise any issues regarding the statute of limitations and timeliness of individual opt-in plaintiffs' claims as they arise.

6.  *Consecutive Numbering and Cross-Referencing of Consent Forms*

The Court denies Defendants' request that consent forms be consecutively numbered and cross-referenced to the opt-in list.  Defendants argue that this will "ensure that they are only returned by individuals from the opt-in list" and will "alert counsel to any situations in which an employee shares a copy of their consent form with a co-worker who was not identified as eligible to opt-in."  ECF No. 44 at 15.  However, it is not clear *why* Defendants would need to be "alert[ed]" to the sharing of consent forms among co-workers, when whether an individual was on the opt-in list could easily be verified without consecutive numbering or cross-referencing, and any

challenges to an employee's eligibility may be appropriately addressed at the second step of FLSA certification in this action.

*7.  Text Message Notice, Production of Telephone Numbers, and Reminder Notice*

The Court will permit the final approved notice to be distributed to potential opt-in plaintiffs via mail, email, and text message, subject to the conditions below.  Although Defendants have raised concerns regarding the potential cost of text messages and the confusion multiple messages may create for potential opt-ins, *see* ECF No. 44 at 15, courts regularly approve the distribution of notice via text message alongside other methods of transmission.  *See, e.g.*, *Aboah*, 662 F. Supp. 3d at 213 (authorizing notice via text message and citing cases); *Shangming Lu v. Diamond Nail Salon, LLC*, No. 3:19-CV-02017 (VAB), 2021 WL 2515895, at *11 (D. Conn. June 18, 2021) (authorizing notice via mail, email, and text message).  Accordingly, Defendants shall produce the last known phone numbers of potential opt-in plaintiffs.

Plaintiff's counsel may utilize the phone numbers to distribute text message notice only; they may not initiate text messages with prospective opt-ins for other reasons.  Plaintiff's counsel shall preserve all text messages sent to prospective opt-in plaintiffs.  To the extent prospective opt-ins initiate text messages in response to the notices, Plaintiff's counsel may respond to such messages, but they must all preserve all such communications.

Plaintiff's counsel may not initiate phone calls with prospective opt-in plaintiffs.  They may speak with potential opt-ins via phone only if those individuals initiate phone communications with Plaintiff's counsel.

In addition, Plaintiff may send a reminder notice, via mail, email, and/or text message, to any potential opt-in who has not yet opted in, halfway through the opt-in period (30 days, as described below).  Defendants have not objected to Plaintiff's request to send a reminder notice,

and it is not uncommon for courts to authorize reminder notices. *See, e.g., Morris v. Lettire Const., Corp.*, 896 F. Supp. 2d 265, 275 (S.D.N.Y. 2012) (finding reminder notice appropriate "[g]iven that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in"); *Shangming Lu*, 2021 WL 2515895, at *11 (authorizing reminder notice). As Plaintiff's request is unopposed and reasonable, Plaintiff may send a reminder notice halfway through the opt-in period.

### 8. Description of Lawsuit

Defendants challenge the description of the lawsuit included in Plaintiff's proposed notice, *see* ECF No. 35-7 at 2, as "contain[ing] statements of the law that may or may not be accurate." ECF No. 44 at 16. Plaintiff's point that Defendants' challenge is vague, at best, is well-taken, as Defendants do not challenge any particular portion of the lawsuit description. Nonetheless, the Court emphasizes that this section of the notice should be framed with conditional language (e.g., you "may be entitled") and make clear that the statements of the law contained therein are Plaintiff's allegations. The paragraph in this section starting "The law provides that . . ." runs afoul of this principle, as it may give the false impression to potential opt-in plaintiffs that they are *certain* to obtain all the relief described in that paragraph, when in fact they only "may" be entitled to such relief. *See* ECF No. 35-7 at 2. Accordingly, the revised proposed notice shall rephrase that paragraph to clarify that it describes the potential relief a plaintiff may receive.

### 9. Opt-in Period

The parties next dispute whether a 60- or 90-day opt-in period is appropriate. Both periods are "common in FLSA collective actions." *Shangming Lu*, 2021 WL 2515895, at *8. However, 90-day opt-in periods are generally adopted "where the period is agreed upon between the parties or special circumstances require an extended opt-in period." *See Zhu*, 424 F. Supp. 3d at 272

(citing cases). Plaintiff has not argued, nor demonstrated, that any special circumstances warrant a 90-day opt-in period in this case, arguing only that Defendants have not shown a 60-day period prejudices them. *Cf. Fang v. Zhuang*, No. 10-CV-1290 (RRM) (JMA), 2010 WL 5261197, at *4 (E.D.N.Y. Dec. 1, 2010) (allowing 90-day opt-in period where prospective plaintiffs engaged in "frequent, long-term international travel"). Accordingly, the Court adopts a 60-day opt-in period (beginning from the date notice issues) for this action.

### 10. Corrective Notice

The final notice will also include some form of corrective notice, given the communications Defendant Jack Casey had with at least two employees, and potentially more, actively discouraging them from participating in this lawsuit and casting doubt on the legitimacy of the suit. *See* Obermeier Decl. ¶ 24 (telling Plaintiff to drop the case); Barger Decl. ¶ 22 (telling Barger the case would not succeed and he should convince Plaintiff to settle). Defendants do not dispute the substance of these communications—they argue only that including a notice that Defendants cannot retaliate against employees for participating in the lawsuit is sufficient to correct for any misgivings potential plaintiffs may have as a result of those communications. *See* ECF No. 44 at 16–17.

The Supreme Court has recognized that, "[b]ecause of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). Relevant here, "[t]he same principles that govern communications with putative class members in a class action under Rule 23 also apply to communications with potential opt-in plaintiffs in a collective action brought under the FLSA." *Zamboni v. Pepe W. 48th St. LLC*, No. 12 Civ. 3157 (AJN)(JCF), 2013 WL 978935, at *2 (S.D.N.Y. Mar. 12, 2013).

Here, the Court finds it appropriate for the notice to include a statement that clarifies that, regardless of any communications an employee may have heard about or received from Defendant Jack Casey, he or she is free to join this action and cannot be retaliated against for doing so. This does not go far beyond what Defendants appear to agree is appropriate. Further, it is well within the Court's power to monitor and ensure the fairness of the notice process, where communications have occurred that may have led to confusion on the part of potential plaintiffs regarding their rights. *See, e.g.*, *Griffin v. Aldi, Inc.*, No. 5:16-CV-0354 (LEK)(ATB), 2017 WL 1957021, at *7 (N.D.N.Y. May 11, 2017) (issuing corrective notice, following defendants' dissemination of separation agreements, which provided that any plaintiff "confused about their right to participate in this litigation . . . may get in touch with Plaintiffs' counsel"); *Zamboni*, 2013 WL 978935, at *3–4 (issuing notice "alerting employees that they have not waived any FLSA rights" and extending opt-in period where defendants solicited statements from employees that they did not have claims for unpaid wages); *Paz v. Piedra,* No. 09 Civ. 03977 (LAK)(GWG), 2012 WL 12518495, at *12 (S.D.N.Y. Jan. 12, 2012) (issuing corrective notice to "explain the protection against retaliation and the right to participate in this lawsuit" in light of defendants' retaliation against certain class and collective members); *see also Aboah v. Fairfield Healthcare Servs., Inc.*, No. 3:20-CV-00763 (SVN), 2023 WL 7366416, at *9 (D. Conn. July 28, 2023) (issuing curative notice as sanction for plaintiffs' attorney's improper behavior in contacting potential plaintiffs and pressuring them to join collective action). However, the language of the revised proposed notice should provide that any potential opt-in contacted by Defendants "may contact Plaintiff's attorneys," rather than the current language which directs them to "contact Plaintiff's attorneys immediately." *See Griffin*, 2017 WL 1957021, at *7 (approving similar language in corrective notice).

*11. Time to Produce Opt-In List*

The dispute between the parties over whether Defendants should have 10 or 15 days to produce the opt-in list is precisely the type of dispute the Court would expect the parties to decide without Court intervention.  Nonetheless, given that the Court has required the parties to submit a joint revised notice within 10 days of this Order, and there will be some brief delay while the Court authorizes a final notice, the Court will allow Defendants 15 business days, or three weeks (21 days) total, from the date of this Order, to produce the opt-in list to Plaintiff's counsel with the required contact information.

## IV.    CONCLUSION

For the reasons described herein, Plaintiff's motion for conditional certification is GRANTED IN PART and DENIED IN PART.  Specifically, the motion is GRANTED insofar as it seeks conditional certification of an FLSA collective and DENIED insofar as it seeks conditional certification of state-law sub-collectives.  By **March 29, 2024**, the parties shall submit a revised proposed notice and consent form in compliance with this ruling.  By **April 9, 2024**, Defendants shall produce to Plaintiff's counsel a list of the names, last known addresses, cell phone numbers, and email addresses of all potential members of the FLSA collective.  The Court will assess the revised proposed notice and consent forms and, if appropriate, authorize the sixty-day notice period to begin a short time thereafter.

**SO ORDERED** at Hartford, Connecticut, this 19th day of March, 2024.


 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE